STATE OF NEBRASKA, APPELLEE, V.
ROBERT N. LONG, APPELLANT.
594 N.W. 2d 310

Filed April 27, 1999.    No. A-98-370.

Kirk E. Naylor, Jr., for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

MUES, INBODY, and CARLSON, Judges.

CARLSON, Judge.

Robert N. Long (Long) appeals his convictions of six separate counts of possession of a firearm by a felon, contending that there was insufficient evidence to sustain his convictions. For the reasons set forth below, we affirm.

## BACKGROUND

In an information filed September 19, 1997, the Platte County Attorney charged Long with six counts of possession of a firearm by a felon, all of which occurred on or about June 17, 1997. The firearms were found after members of the Nebraska State Patrol searched a house, jointly owned by Long and his wife, Janet Long, on June 17. Possession of a deadly weapon which is a firearm by a felon or a fugitive from justice is a Class III felony pursuant to Neb. Rev. Stat. § 28-1206(3)(b) (Reissue 1995).

After arraignment, Long pled not guilty to all six of the charges against him, and a jury trial was held on February 3 and 4, 1998. At trial, Long stipulated that he was a convicted felon, having been convicted and sentenced for delivery of a controlled substance and attempted delivery of a controlled substance after pleading guilty to both charges on September 27, 1991.

At trial, various officers with the Nebraska State Patrol testified regarding the search of the Longs' home, pursuant to a search warrant, which occurred at approximately 7:30 p.m. on June 17, 1997. At trial, the State was not allowed to offer any evidence regarding the specific reason for the search of the Longs' home. Prior to the jury's selection, Long's counsel made

an oral motion requesting the exclusion of such evidence, which the trial court sustained.

Upon searching the Longs' home, officers found several firearms located inside the house, most of which were stored in a gun cabinet located in a northeast bedroom of the Longs' home. In addition to finding approximately 14 firearms in the gun cabinet, other firearms were found outside of the cabinet: 2 firearms on a waterbed in the northeast bedroom, 1 firearm near the entrance to a closet in the northeast bedroom, and 1 firearm in a box in the living room.

The officers involved in conducting the search testified that they had conducted a prior search of the Longs' home in March 1991 and that at that time, the officers observed several firearms in the northeast bedroom, the bedroom which Janet and Long had shared in 1991. The officers testified that in 1991, they took down information on the guns and that some of the guns found in 1991 were still present in the northeast bedroom during the June 17, 1997, search. On June 17, the officers collected 24 firearms, and the evidence shows that 3 of these firearms belonged to one of the Longs' sons, Mike. Both Janet and Mike testified that Long owns some of the other firearms which the officers found.

Janet and Mike, but not Long, were present during the search on June 17, 1997. Evidence at trial shows that at the time of the search, Long and Janet were separated. At trial, Long produced evidence to show that in the first week of May 1997, he moved out of the Longs' home and into a house rented by Amy Bierman, Long's girl friend at the time of trial. Bierman testified that she saw Long every day from the beginning of May until June 17 and that Long stayed at her house every night during that time. Bierman testified that she and Long orally agreed to split all expenses involved with her house and that this cost-sharing arrangement continued after Lori Fletcher moved into Bierman's house on June 4, 1997. Bierman testified that Long had a limited number of items at her house and that what Long did have at her house was "[n]othing major."

Janet testified that she discovered that Long was residing with Bierman on May 25, 1997, and that she immediately took Long's keys to their home away from him. Long continued to

have full access to a detached garage on the Longs' property which contains inventory and other items related to Long's business as well as some of Long's personal tools. The evidence shows that even without keys, Long continued to have access to the Longs' home and that either Janet or Mike allowed Long to enter the house whenever Long wanted to do so. Additionally, the evidence shows that Long routinely came to the Longs' home to change clothes, do laundry, eat, talk, and retrieve additional personal items. At the time of trial, Long and Janet continued to jointly own the house, and Long continued to pay the mortgage on the house as well as the utilities.

Janet testified that prior to their separation, all of the firearms in the Longs' home were locked in a gun cabinet and that only she had a key to the cabinet. Janet testified that she knew that as a convicted felon, Long could not legally possess a firearm. Janet testified that sometime in the afternoon on June 17, 1997, she took three or four of the firearms out of the gun cabinet, intending to place the firearms, along with other items, into storage. Janet testified that she intended to place the firearms into storage because she was somewhat afraid of Long and that she had previously sought a protection order against Long. At trial, one officer testified that prior to searching the Longs' home on June 17, he observed Janet loading various items into the back of a pickup, but noted that Janet had failed to load any firearms into the pickup. An officer testified that contrary to Janet's testimony, Janet told him that she was moving out of the Longs' home because of problems she was having with Long, not merely that she was moving various items out of the house.

On February 4, 1998, the jury found Long guilty of all six counts of possession of a firearm by a felon. On March 20, the trial court sentenced Long to a term of 3 years of intensive supervised probation on each count, with the sentence on each count to run concurrent with one another, subject to all terms and conditions of the probation.

Long appeals.

### ASSIGNMENTS OF ERROR
On appeal, Long contends that the evidence presented at trial was insufficient as a matter of law to sustain his convictions and

that the trial court erred in failing to grant his motion to dismiss at the close of all the evidence.

## STANDARD OF REVIEW

■ In determining whether a criminal defendant's motion to dismiss for insufficient evidence should be sustained, the State is entitled to have all of its relevant evidence accepted as true, the benefit of every inference that reasonably can be drawn from the evidence, and every controverted fact resolved in its favor. *State v. Glantz*, 251 Neb. 947, 560 N.W.2d 783 (1997).

## ANALYSIS

Initially, we dispose of Long's argument,

> In the instant case, the evidence presented against appellant [Long] was entirely circumstantial. . . .
>
> Where a criminal case is based upon circumstantial evidence, the trial court must determine whether the circumstantial evidence is reasonably susceptible of two interpretations, one of guilt and the other of non-guilt. If the inference of non-guilt is stronger than that of guilt, it is the duty of the trial court to dismiss the case prior to submitting the evidence to the jury.

Brief for appellant at 7. This proposition of law is commonly referred to as the "accused's rule," and as argued by the State, the accused's rule is no longer a valid rule in Nebraska.

■ In *State v. Pierce*, 248 Neb. 536, 548, 537 N.W.2d 323, 330-31 (1995), the Nebraska Supreme Court overruled those cases espousing the accused's rule as an appropriate standard of review and stated,

> Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same:
>
> "In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly

admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction."

*Constructive Possession.*

Because there was no evidence that Long had a firearm on his person on or about the date in question, the issue in this case is whether the State produced sufficient evidence to prove that Long, as a convicted felon, was in constructive possession of a firearm on or about June 17, 1997. Long argues that he was not in constructive possession of any firearms on or about June 17 because he had not resided at the house he owned with Janet since early May and because he did not have keys to the house after May 25. Additionally, Long contends that regardless of his presence at or his access to the Longs' home, he did not have access to the firearms which were kept in a locked gun cabinet, to which only Janet had a key. The State argues that the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support Long's conviction of six counts of a felon in possession of a firearm on or about June 17. We agree with the State.

Section 28-1206(1) provides, "Any person who possesses any firearm or brass or iron knuckles and who has previously been convicted of a felony or who is a fugitive from justice commits the offense of possession of a deadly weapon by a felon or a fugitive from justice."

In instruction No. 5, the trial court instructed the jury, " 'Possession' of a firearm means either knowingly having it on one's person or knowing of the object's presence and having control over the object."

This instruction was based on NJI2d Crim. 4.2 which reads, " 'Possession' of (here insert object allegedly possessed) means either knowingly having it on one's person or knowing of the object's presence and having control over the object." The comment to NJI2d Crim. 4.2 states that this instruction is typically given in possessory drug cases. The comment states in part, "To be convicted of a possessory drug crime the state must prove that a defendant had physical or constructive possession of a drug with knowledge of its presence and its character."

In *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991), the Nebraska Supreme Court stated that this possessory standard is equally applicable to possession of a firearm, specifically to possession of a short shotgun under Neb. Rev. Stat. § 28-1203 (Reissue 1995). In *State v. Frieze*, 3 Neb. App. 263, 525 N.W.2d 646 (1994), this court also held that the constructive possession doctrine applies to possession of a short shotgun, as well as to other contraband. Therefore, we logically extend the doctrine of constructive possession to the possession of a firearm by a felon or a fugitive from justice under § 28-1206.

*Sufficiency of Evidence.*
The fact of possession may be proved by circumstantial evidence. *State v. Massa*, 242 Neb. 70, 493 N.W.2d 175 (1992), *overruled on other grounds, State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). Additionally, a defendant's control or dominion over premises at which narcotics or other contraband is located may establish the defendant's constructive possession of the contraband. *State v. Valdez*, 5 Neb. App. 506, 562 N.W.2d 64 (1997).

In *Massa, supra*, Massa appealed his convictions of possession of marijuana with intent to deliver and possession of lysergic acid diethylamide (LSD). One of the issues on appeal was whether the circumstantial evidence was sufficient to show that Massa maintained dominion and control over controlled substances found in another person's house.

In *Massa*, the Nebraska State Patrol obtained a warrant to search the home of Massa's girl friend, Michelle Daffer, on June 23, 1990. Upon searching the house, the officers found a cookie tin containing nine baggies of marijuana, a hand-held scale, and various drug paraphernalia hidden under the couch in the living room as well as two squares of LSD in plain view on a table in the living room. The officers also found various small amounts of loose marijuana in several areas in plain view in the living room. The officers' search of the rest of the house uncovered a small baggie of marijuana in a leather jacket located among women's clothing in an adult's bedroom closet. The officers also searched Massa's person, finding $532.88 in cash, a pipe, and a baggie of marijuana in his jeans pocket.

At trial, Massa argued that the drugs found at Daffer's residence were not his and that he did not reside with Daffer. At trial, Massa's employer testified that he paid Massa his weekly wage of $300 in cash on June 23, 1990. Massa's employer further testified that he let Massa live in a backroom at his place of business. At trial, Daffer testified that Massa did not reside at her house, but only occasionally stayed there, and that some of the clothes in the closet belonged to her ex-husband. Daffer also testified that except for the marijuana found on Massa's person, the LSD and the marijuana that officers had found in her house belonged to her. Daffer testified that she alone was involved in packaging and selling the marijuana.

In *Massa*, the Nebraska Supreme Court noted that during the search, the officers found evidence pointing to Massa's use of Daffer's house as a residence. Specifically, at trial, the State offered photographs which showed Massa's motorcycle parked outside Daffer's residence, a bedroom closet full of men's clothing, and a picture on a bedroom dresser of Massa, Daffer, and Daffer's son. The evidence also showed that at Daffer's home, the officers found a receipt bearing Massa's name, but a different address, and an envelope addressed to Massa at another address. Additionally, officers found a registration to a vehicle owned by Massa that listed a Denton, Nebraska, address in the cookie tin hidden under the couch, as well as a roll of film which, when developed, included one photograph of Massa coming out of the shower at Daffer's home and four other photographs showing Massa outside of Daffer's home.

The Nebraska Supreme Court concluded that "the evidence offered by the State, when taken as a whole, was sufficient to establish beyond a reasonable doubt that the defendant maintained dominion and control over the controlled substances as required to support the verdicts." *State v. Massa*, 242 Neb. 70, 74, 493 N.W.2d 175, 179 (1992).

Similarly, in *State v. Jensen*, 238 Neb. 801, 472 N.W.2d 423 (1991), Jensen was convicted of possession of methamphetamine and possession with intent to manufacture, distribute, deliver, or dispense cocaine. One of the issues was whether the evidence was sufficient to demonstrate beyond a reasonable doubt that Jensen had a connection to the premises

where the narcotics were found. Upon execution of a search warrant, cocaine and methamphetamine and evidence of cocaine distribution were found in the northwest bedroom of the searched house. A police officer testified that he was aware that the bedroom in which the drugs were found was occupied by Jensen. Female clothing and correspondence bearing Jensen's name was found in the northwest bedroom, and Jensen received a telephone call at the residence while the search of the premises was underway. Further, Jensen informed an officer that "the cigarettes were in *her* bedroom on a stereo or entertainment center," referring to the northwest bedroom where the drugs were found. *Id.* at 813, 472 N.W.2d at 431.

At trial, Jensen claimed that she lived elsewhere and merely stored items at the residence. The Nebraska Supreme Court determined that when the circumstantial evidence was viewed in the light most favorable to the State, the jury could find, beyond a reasonable doubt, that Jensen committed the charged offenses. The court further stated that "this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Those questions of fact were for Jensen's jury to resolve, which it did in favor of the State." *Id.* at 814, 472 N.W.2d at 432.

In the instant case, there is circumstantial evidence on this record showing that Long maintained dominion and control over the firearms in the Longs' home. There is no dispute that Long was a convicted felon at the time of the search and that Long owned some of the firearms located in the Longs' home. It is also undisputed that Long was aware that the firearms were present, most of which had been located for many years in a bedroom that Long had shared with Janet. Although Long claimed that he resided elsewhere at the time of the search, the evidence shows that Long still resided at the Longs' home on a more than casual basis, specifically, that Long stopped by to eat, do laundry, change clothes, get his mail, retrieve personal items, and simply chat. Additionally, at the time of the search, Long and Janet jointly owned their home, and Long continued to pay the bills relating to their home, including the mortgage and the utilities. In contrast, the evidence shows that Long did not have

keys to the Longs' home after May 25, 1997, that the guns in the Longs' home were kept in a locked gun cabinet, and that Janet was the only person with a key to the cabinet.

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Larsen*, 255 Neb. 532, 586 N.W.2d 641 (1998). Therefore, the issue of whether Long possessed the guns on or about June 17, 1997, was a question of fact which the jury resolved in favor of the State, and it is not this court's function to replace the jury's view of the evidence with its own.

### CONCLUSION

After reviewing the evidence most favorably to the State, we conclude on this record that there was sufficient evidence to support Long's convictions. Therefore, the trial court did not err in denying Long's motion to dismiss at the close of all the evidence, and we affirm the district court's order.

AFFIRMED.