Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/30/2019 09:08 AM CDT

State of Nebraska, appellee, v.
Jaquez S. Sherrod, appellant.
___ N.W.2d ___

Filed July 30, 2019.    No. A-18-593.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.

3. ____: ____. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.

4. **Controlled Substances.** A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it.

5. **Controlled Substances: Evidence: Circumstantial Evidence: Proof.** Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence.

6. **Controlled Substances.** Mere presence at a place where a controlled substance is found is not sufficient to show constructive possession.

7. **Evidence.** The holder of a key, be it to a dwelling, vehicle, or motel room, has constructive possession of the contents therein.

8. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the

defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.

 9. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

10. **Effectiveness of Counsel: Records: Appeal and Error.** A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. The determining factor is whether the record is sufficient to adequately review the question.

11. **Effectiveness of Counsel: Proof: Appeal and Error.** When an ineffective assistance of counsel claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

12. ____: ____: ____. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review.

13. **Effectiveness of Counsel: Records: Appeal and Error.** An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice.

14. **Trial: Attorneys at Law.** Trial counsel is afforded due deference to formulate trial strategy and tactics.

15. **Effectiveness of Counsel: Presumptions: Appeal and Error.** There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Abbi R. Romshek for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

Riedmann, Arterburn, and Welch, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Jaquez S. Sherrod was convicted in the district court for Douglas County of manufacturing, distributing, or possession with intent to distribute 10 to 28 grams of crack cocaine with a firearm and possession of a deadly weapon (firearm) by a prohibited person. On appeal, he alleges that the evidence was insufficient to support the convictions and that he received ineffective assistance of counsel in four respects. We conclude that the record on direct appeal is sufficient to address only one of the ineffective assistance of counsel claims. We find the evidence was sufficient to support the convictions and therefore affirm.

## BACKGROUND

On September 26, 2017, Sherrod was charged with manufacturing, distributing, or possession with intent to distribute a controlled substance (crack cocaine) with a firearm, a Class IC felony, and possession of a deadly weapon (firearm) by a prohibited person, a Class ID felony. At trial, the evidence revealed that on September 13, the Omaha Police Department SWAT team executed a "no-knock search warrant" at a residence located on North 18th Street in Omaha, Nebraska. Sherrod was the subject of the search warrant. The SWAT team broke down the front door to the residence, looked inside, and observed Sherrod at the opposite end of the residence. The SWAT team then deployed a "flash bang" distraction device before entering the home. Sherrod and another male were located in an upstairs bedroom.

The residence was searched, and officers located a set of keys in the bedroom on the first floor. The keyring had two keys on it. One was a key to a vehicle that was registered to Sherrod and parked about a block away from the 18th Street residence. The other key was described as an "older style skeleton key" and "a pretty antique or old looking key." That key fit into the lock on the door to the first floor bedroom.

There was a closet and bathroom inside the first floor bedroom. Officers found a "hollowed out" area on the top of the doors to the closet and bathroom, and each hollowed-out area held two plastic baggies containing crack cocaine. Officers also found a baggie of crack cocaine on the floor in the kitchen at the base of the stairs going upstairs. The parties stipulated that each of the five baggies contained approximately 3 grams of crack cocaine, and testing concluded that the substance was, in fact, crack cocaine and that the total weight of all five baggies combined was approximately 13.452 grams.

Using the key found in the first floor bedroom, officers searched Sherrod's vehicle and found sandwich baggies in the center console. Inside the residence, police found digital scales and glass plates with razor blades. When Sherrod was arrested at the scene, he was carrying $833 in cash on his person in a combination of bills no larger than a $20 bill.

An Omaha police officer with special training in the field of narcotics testified that "street level" crack cocaine dealers sell drugs for cash and commonly use weapons, such as firearms, to protect their business. He explained that crack cocaine is cut with a razor or knife and normally packaged in small sandwich baggies. A dose of crack cocaine is .2 grams, which sells for $20. Thus, an amount between 10 and 15 grams of crack cocaine is an amount consistent with distribution.

Officers also found a firearm in the dresser drawer in the first floor bedroom. The parties stipulated that Sherrod was prohibited from possessing a weapon because he had previously been convicted of a felony. Testing revealed that there was DNA from at least three people on the firearm. A DNA analyst explained that Sherrod could not be excluded as a partial profile contributor to the DNA found on the firearm. The probability of a random individual's matching the partial DNA profile within the mixture, given that Sherrod expresses such a profile, is approximately 1 in 5.76 million. There are currently approximately 1.9 million people in the State of Nebraska.

Although Sherrod could not be excluded as a contributor to the DNA found on the firearm, the DNA analyst explained that it is possible for DNA to be transferred onto an item that someone did not touch. For example, if someone owns a hammer and shakes someone else's hand and then touches their own hammer, the DNA of the person whose hand they shook could be transferred onto the hammer. Generally, however, the most DNA found on the item touched would come from the person who actually touched the item.

As a result of the execution of the search warrant and location of the crack cocaine and firearm, Sherrod was arrested. The following day, he made a telephone call from jail which was recorded. In the call, he asked the male to whom he was speaking if he had "been back to the house." The recipient of the call said that he had, but that he did not want to talk because he knew the call was being recorded. Sherrod then asked whether he "check[ed] the door" when he went to the house.

During its case in chief, the State made an oral motion in limine because the defense had indicated a desire to inquire into how Sherrod became the subject of the search warrant. The State explained that Sherrod became the target for the warrant because police had completed a controlled buy of crack cocaine 2 days before executing the search warrant and that the confidential informant had identified Sherrod as the person who sold the drugs from the 18th Street residence. The State indicated that it had not charged Sherrod with any crimes related to the controlled buy because it did not want to disclose the identity of the informant. The controlled buy was audio and video recorded, and thus, in order to protect the identity of the informant, the district court granted the motion in limine except to the extent the video could be manipulated to remove any identifying features of the informant.

During the defense's case, several law enforcement officers were recalled to the stand, and the defense elicited testimony as to why Sherrod was named as a suspect in the search warrant,

which led to an explanation of the controlled buy. The video recording of the controlled buy was marked as an exhibit, and Sherrod offered it into evidence. The State objected and invoked its privilege under Neb. Rev. Stat. § 27-510 (Reissue 2016) to protect the identity of the informant. The court sustained the objection.

The officers then testified that after the controlled buy was completed, the informant provided them with a physical description of the person who sold the crack cocaine and a "street name." The police department keeps a file of street names, and the only person in the file who matched the street name provided by the informant is Sherrod. The officers showed the informant a photograph of Sherrod, and the informant identified him as the person who sold the drugs during the controlled buy. The informant used in the controlled buy has previously provided reliable information to police on approximately 15 to 20 occasions.

The defense reoffered the video into evidence, and the State objected or, in the alternative, requested that the video be played for the jury without its audio. The court received the video into evidence, and it was played for the jury without audio.

The defense also called to testify the man who lived at the 18th Street residence. He testified that Sherrod is his friend, but that Sherrod does not live at that residence, nor does he have any clothing or property at the residence.

After the conclusion of trial and deliberation, the jury found Sherrod guilty of both charges. Sherrod was sentenced to 7 to 9 years for the drug conviction and a concurrent term of 3 to 3 years and 1 day for the weapons conviction. Sherrod timely appeals to this court.

## ASSIGNMENTS OF ERROR

Sherrod assigns that (1) the evidence was insufficient to sustain the convictions and (2) he received ineffective assistance of counsel.

## STANDARD OF REVIEW

[1] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McCurdy*, 301 Neb. 343, 918 N.W.2d 292 (2018).

[2,3] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Sundquist, supra*.

## ANALYSIS

*Sufficiency of Evidence.*

Sherrod argues that the evidence was insufficient to sustain his convictions. We disagree.

It is unlawful for any person to knowingly or intentionally manufacture, distribute, or possess with intent to distribute a controlled substance. Neb. Rev. Stat. § 28-416(1) (Cum. Supp. 2018). Any person who violates § 28-416(1) with respect to crack cocaine in a quantity of at least 10 grams but less than 28 grams is guilty of a Class ID felony. § 28-416(8). The penalty is enhanced for a person knowingly or intentionally possessing a firearm while in violation of § 28-416(1), and

thus, an offense under § 28-416(1) that would be a Class ID felony without a firearm becomes a Class IC felony. See § 28-416(16).

Sherrod concedes that the amount of crack cocaine found during the execution of the search warrant is consistent with an amount used in distribution as opposed to a personal use amount, and the parties stipulated at trial that the total amount of crack cocaine found during the search was approximately 13.452 grams. Sherrod argues, however, that the evidence was not sufficient to identify him as the person selling the drugs. He claims that he did not live at the residence, and the only evidence connecting him to the first floor bedroom was the key that unlocked the bedroom door which was found on the same keyring as the key to Sherrod's vehicle.

[4,5] A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence. *Id*.

[6] Because Sherrod was not found to be in actual possession of the crack cocaine, the question before us is whether there is sufficient evidence from which a trier of fact could reasonably infer that he was in constructive possession, i.e., that he was aware of the presence of the crack cocaine and had dominion or control over it. See *id*. Mere presence at a place where a controlled substance is found is not sufficient to show constructive possession. *Id*. Instead, the evidence must show facts and circumstances which affirmatively link Sherrod to the crack cocaine so as to suggest that he knew of it and exercised control over it. See *id*.

[7] In the present case, the majority of the crack cocaine was found in the first floor bedroom where officers also found a key to a vehicle registered to Sherrod on the same keyring as a key that unlocked the door to the bedroom. The Eighth

Circuit Court of Appeals has joined every other circuit in rul-
ing that the holder of a key, be it to a dwelling, vehicle, or
motel room in question, has constructive possession of the
contents therein. *U.S. v. Timlick*, 481 F.3d 1080 (8th Cir. 2007).
Thus, because Sherrod had a key to the first floor bedroom, a
reasonable jury could have inferred that he had dominion or
control over its contents. See *id*.

Additional circumstantial evidence supports the jury's con-
clusion that Sherrod had constructive possession over the con-
tents of the first floor bedroom, including the crack cocaine.
There was DNA on the firearm found in the bedroom, and
Sherrod could not be excluded as a contributor to that DNA.
In a recorded telephone call made from jail, Sherrod asked
whether the recipient of the call had "been back to the
house" and whether he had "check[ed] the door." This gives
rise to a reasonable inference that Sherrod knew there was
crack cocaine located in hollowed-out portions of doors in
the bedroom.

In addition, officers found small plastic baggies in a vehicle
registered to Sherrod, which are consistent with the packag-
ing for crack cocaine. And when Sherrod was arrested, he was
carrying a large amount of cash. Moreover, an informant had
purchased crack cocaine from a person at the residence 2 days
before the search warrant was executed and identified Sherrod
as the person who sold the drugs. We therefore find that the
evidence was sufficient for a reasonable jury to conclude that
Sherrod had constructive possession of the crack cocaine.

Sherrod raises a similar argument with respect to the fire-
arm. He argues that the evidence was insufficient to establish
that he possessed the firearm at the time he manufactured, dis-
tributed, or possessed with intent to distribute crack cocaine.
He notes that DNA from at least three different people was
found on the firearm, and he argues that his DNA could have
been transferred onto the firearm by someone else.

As we addressed above, the circumstantial evidence was
sufficient for the jury to find that Sherrod had dominion and

control over the contents of the first floor bedroom, the location where the firearm was found. In addition, Sherrod could not be excluded as a contributor to DNA found on the firearm, and the probability of an unrelated individual matching the DNA profile was approximately 1 in 5.76 million. From this evidence, the jury could conclude that Sherrod possessed the firearm while manufacturing, distributing, or possessing with intent to distribute crack cocaine.

Sherrod argues that his DNA could have been transferred onto the firearm by someone who had handled an item that Sherrod also handled. While this possibility exists according to the DNA analyst, it is clear from the jury's verdict that it did not believe that is how Sherrod's DNA got on the firearm. To accept Sherrod's argument would require us to reweigh the evidence, which an appellate court cannot do on appeal. See *State v. McCurdy*, 301 Neb. 343, 912 N.W.2d 292 (2018) (appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, or reweigh evidence; such matters are for finder of fact). Therefore, viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

Sherrod was also convicted of possession of a deadly weapon (firearm) by a prohibited person. As applicable here, a person commits the offense of possession of a deadly weapon by a prohibited person if he or she possesses a firearm and has previously been convicted of a felony. See Neb. Rev. Stat. § 28-1206(1) (Cum. Supp. 2018). The parties stipulated at trial that Sherrod was prohibited from possessing a weapon because he had previously been convicted of a felony.

With respect to this offense, Sherrod raises the same argument as he raised for the drug offense: He argues that the evidence was insufficient to prove that he possessed the firearm found at the residence. We find no merit to this argument.

This court has extended the doctrine of constructive possession to the crime of possession of a firearm by a felon

under § 28-1206. See *State v. Long*, 8 Neb. App. 353, 594 N.W.2d 310 (1999). As stated above, constructive possession means the possessor did not have actual possession but was aware of the presence of the contraband and had dominion or control over it. See *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

We incorporate our analysis from above where we determined that the evidence was sufficient for the jury to conclude that Sherrod had constructive possession of the firearm found in the first floor bedroom. A key to the bedroom was found alongside the key to a vehicle registered to Sherrod. DNA was located on the firearm, and Sherrod could not be excluded as a contributor to that DNA. As a result, the evidence was sufficient to support the conviction for possession of a firearm by a prohibited person.

*Ineffective Assistance of Counsel.*

[8] Sherrod is represented in this direct appeal by different counsel than the counsel who represented him at the trial level. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

[9-12] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019). A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. The determining factor is whether the record is sufficient to adequately review the question. *Id*. When the claim is raised in a direct appeal, the appellant is not required to allege prejudice;

however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id*.

[13] Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit, or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id*.

Sherrod asserts that his trial counsel was ineffective in four respects. First, he claims that trial counsel was ineffective in failing to object to prejudicial and irrelevant evidence, including evidence of prior bad acts. He specifically argues that trial counsel should have objected to testimony that Sherrod was the subject of the search warrant because such evidence allowed the jury to infer that Sherrod had committed prior crimes. He also contends that trial counsel's performance was deficient because he elicited evidence of the controlled buy and the informant's identification of Sherrod as the person who sold the drugs.

[14,15] The decision whether or not to object has long been held to be part of trial strategy. *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. *Id*. There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id*. Because of this deference, the question whether the

failure to object was part of counsel's trial strategy is essential to a resolution of Sherrod's ineffective assistance of counsel claims. See *id*. There is no evidence in the record regarding trial counsel's trial strategy, including why he did not object to testimony that Sherrod was the subject of the warrant or why he elicited testimony regarding the controlled buy and the informant's identification of Sherrod. We therefore conclude that the record on direct appeal is insufficient to address this claim.

Sherrod additionally asserts that trial counsel was ineffective in failing to elicit more specific testimony regarding the skeleton key to the first floor bedroom. He claims that the evidence is unclear as to whether the key was a traditional skeleton key in the sense that it could be used to unlock many different doors or whether the term was used to describe the key simply because of its antique appearance. He alleges that as a result of trial counsel's deficient performance, the jury was permitted to erroneously assume that the key, like most keys, unlocked only the door to the first floor bedroom and that thus, Sherrod resided or had control over the bedroom and its contents.

The State argues that Sherrod is unable to show he was prejudiced by counsel's failure to elicit specific testimony regarding the key, because the key opened the door to this bedroom, and that given the other evidence, there is not a reasonable probability the result of the proceeding would have been different.

We find the record insufficient to address this claim. Because trial counsel did not inquire into what the officer meant by the term "skeleton key," it was unclear for the jury exactly how the key worked, other than the fact that it opened the bedroom door. And if the key was, in fact, a traditional skeleton key that opened multiple doors, that fact may have been relevant to the jury. Because we do not know why trial counsel did not elicit testimony regarding the key from the officer, the record is insufficient to address this argument.

Sherrod further asserts that trial counsel was ineffective in failing to properly investigate defenses and advise him by offering the video into evidence at trial without personally reviewing it or reviewing it with Sherrod. He claims that if counsel had reviewed the video prior to trial, he would have realized that the video had no probative value and that offering it into evidence at trial would open the door to evidence of his prior bad acts.

The record makes clear that trial counsel had attempted to get a copy of the video "since day one," but the State, claiming its privilege to protect the identity of the informant, would not release a copy. Thus, the fact that trial counsel was unable to review the video prior to trial was not for lack of trying. We therefore interpret this claim as an argument that trial counsel should not have offered the video into evidence without having first reviewed it. Sherrod concedes that the record is insufficient to address this claim, and we agree. The record before us does not contain any information as to why trial counsel offered the video into evidence, a decision which was part of counsel's trial strategy. We are therefore unable to address this claim on direct appeal.

Finally, Sherrod argues that trial counsel was ineffective in failing to file a motion to suppress the evidence seized as a result of the search of the 18th Street residence and Sherrod's vehicle. He asserts that there is no evidence the search occurred with consent or was based on probable cause and that because the search warrant is not part of the record, the record is insufficient to address this claim.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

Sherrod asserts only that the record does not contain evidence of consent or probable cause; he does not assert that there was no consent or probable cause for the execution of the search warrant. Furthermore, to the extent he contends probable cause was lacking, he does not specify upon what facts he bases that conclusion. We determine that he has not alleged deficient performance with sufficient particularity, and therefore, this claim is not properly raised in this appeal. See *id*.

## CONCLUSION

We conclude that the record before us is sufficient to address only one of the ineffective assistance of counsel claims, and we reject that claim. We additionally conclude that the evidence is sufficient to support the convictions and therefore affirm.

Affirmed.