IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. WOODARD


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

ANTHONY WOODARD, APPELLANT.


Filed November 30, 2021.    No. A-21-284.


Appeal from the District Court for Scotts Bluff County: ANDREA D. MILLER, Judge. Affirmed.

Jessica R. Meyers, Scotts Bluff County Deputy Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.


MOORE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

INTRODUCTION

Following a jury trial in the Scotts Bluff County District Court, Anthony Woodard was convicted of possession of a firearm by a prohibited person and possession of methamphetamine. The district court subsequently determined Woodard was a habitual criminal and sentenced him to concurrent sentences of 10 to 10 years' imprisonment for each conviction. On appeal, Woodard claims the evidence was insufficient to sustain his convictions. We affirm.

BACKGROUND

This case arises from a probation officer's search of Woodard's residence on March 13, 2020. At that time, Woodard was on post-release supervision for a previous criminal conviction. When the probation officer came to the residence, Woodard, his girlfriend, and another female acquaintance were present. The female acquaintance "left shortly after" the probation officer's

- 1 -

arrival, and she was "allowed . . . to leave" before the end of the home search because "she was not on probation." The record does not indicate that individuals other than Woodard and his girlfriend lived in the residence.

During the course of the home search, the probation officer located a "bolt-action Mauser" rifle in the spare bedroom of Woodard's residence; that room was used as a "catch-all" to store various miscellaneous items. The rifle was located behind the door to the room and propped next to a shelf. At that point, the probation officer "stopped [his] search" of the residence, "secured [Woodard] in handcuffs," and requested assistance from law enforcement "because of the rifle."

Approximately 15 minutes later, a deputy from the Scotts Bluff County Sheriff's Office and a police officer from the Minatare Police Department arrived at Woodard's residence, and the home search resumed. In addition to the Mauser rifle, rifle ammunition and shotgun ammunition were discovered in the spare bedroom. The deputy spoke to Woodard about the rifle, and according to the deputy, Woodard reported that the rifle was not his and that it belonged to a male acquaintance who "came over to his house the night before and had asked him to re-blue or refinish the rifle." Woodard explained to law enforcement that he told this acquaintance that "he did not have time to [refinish the rifle] right away," but the acquaintance had forgotten the rifle and accidentally left it in the spare bedroom when he departed. The deputy testified that, to his knowledge, no DNA evidence or fingerprints were recovered from the Mauser rifle.

As the search continued, law enforcement discovered narcotics and drug paraphernalia in the house's main bedroom used by Woodard and his girlfriend. Officers found a "tray of narcotics equipment," including multiple glass pipes, in a dresser "on the right side of the bed" along with a "brown crystalline substance." One glass pipe contained what the officers identified as "marijuana residue," and another contained "a white substance." Woodard's girlfriend "took responsibility for all the various glass pipes" discovered in the dresser when questioned by law enforcement. A folded business card with a "white crystalline substance" was also discovered in a jewelry box on an "armoire inside of the bedroom." Woodard's name was listed on the card. The "brown crystalline substance" and business card were later sent to the Nebraska State Patrol Crime Laboratory for testing. The 2.84 grams of "brown crystalline substance" tested positive for methamphetamine, but the substance on the business card was not tested. The deputy testified that, to his knowledge, no DNA evidence or fingerprints were recovered from those items. Woodard and his girlfriend were subsequently placed under arrest.

Developments in the case led law enforcement to believe that the Mauser rifle discovered at Woodard's residence matched the description of a rifle reported stolen in February 2020. A shotgun and air rifle were also reported stolen in that theft, and an investigator "reviewed jail phone calls that were placed on March 13[, 2020,] that led [him] to believe that the shotgun and air rifle were at [Woodard's father's] residence." The investigator subsequently recovered a shotgun and air rifle from Woodard's father, and the victim of the theft identified all three firearms as those that were stolen from his home. According to the investigator, Woodard described in a later interview that the male acquaintance who left the rifle at his residence "had sold him the shotgun and air rifle," and those firearms were in his father's possession because Woodard "knew he was not allowed to own firearms." Woodard also placed two jail phone calls on March 15 referencing the firearms discovered in this case.

On March 16, 2020, the State filed a criminal complaint in the county court for Scotts Bluff County charging Woodard with: count I, possession of a firearm by a prohibited person in violation of Neb. Rev. Stat. § 28-1206 (Supp. 2019); count II, possession of methamphetamine in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2018); and counts III and IV, possession of a stolen firearm in violation of Neb. Rev. Stat. § 28-1212.03 (Reissue 2016). Count III related to the Mauser rifle discovered at Woodard's residence, and count IV related to the shotgun recovered from his father's residence. All counts were alleged to have occurred on March 13. Woodard's case was bound over to the district court. On April 2, the State filed an information charging the same four counts alleged in the criminal complaint, and the information further charged Woodard with count V, being a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016).

Trial commenced on January 5, 2021, and ended on January 6. The parties stipulated prior to trial that Woodard was a felon who was legally prohibited from possessing a firearm. The State offered evidence, including excerpts of the two jail phone calls placed by Woodard on March 15, 2020. Woodard's counsel did not present evidence after the State rested. After the close of all of the evidence, the jury found Woodard guilty of count I, possession of a firearm by a prohibited person, and count II, possession of methamphetamine. The jury found Woodard not guilty on counts III and IV, possession of a stolen firearm.

A sentencing hearing was held on March 12, 2021. The district court determined Woodard was a habitual criminal and sentenced him to concurrent sentences of 10 to 10 years' imprisonment on count I and 10 to 10 years' imprisonment on count II, each count subject to a 10-year mandatory minimum pursuant to the court's habitual criminal determination.

Woodard now appeals.

ASSIGNMENT OF ERROR

Woodard claims that the evidence presented at trial was insufficient to sustain his convictions for possession of a firearm by a prohibited person and for possession of methamphetamine.

STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

ANALYSIS

Woodard claims on appeal that the evidence was insufficient to sustain his convictions. Woodard argues that the State failed to prove beyond a reasonable doubt that Woodard either actually or constructively possessed any firearms or the methamphetamine discovered in his residence during the home search. As previously noted, Woodard stipulated prior to trial to being

prohibited from possessing a firearm due to his prior felony convictions, and his arguments on appeal solely concern whether he had possession over the contraband at issue in this case.

The jury convicted Woodard of possession of a firearm by a prohibited person and possession of methamphetamine. Section 28-1206(1), as relevant to this case, prohibits a person from possessing a firearm if he or she has previously been convicted of a felony. Section 28-416(3) in turn prohibits a person from knowingly or intentionally possessing a controlled substance. Methamphetamine is a controlled substance. See Neb. Rev. Stat. § 28-405(c)(3) [Schedule II] (Cum. Supp. 2018).

With respect to firearms, a person possesses a firearm when he or she knowingly has it on his or her person or knows of its presence and has control over it. See, *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991); *State v. Long*, 8 Neb. App. 353, 594 N.W.2d 310 (1999). Similarly, a person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017).

Possession of either a firearm or a controlled substance may be actual or constructive. See, *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021); *State v. Sherrod*, 27 Neb. App. 435, 932 N.W.2d 880 (2019). Actual possession is synonymous with physical possession. *State v. Warlick, supra.* Constructive possession, in contrast, may be proved by mere ownership, dominion, or control over contraband itself, coupled with the intent to exercise control over the same. *Id.* Two persons may have constructive possession of contraband, or one may have actual possession and the other have constructive possession. See *id.* A defendant's control or dominion over premises where contraband is located may establish the defendant's possession of that contraband. See, *State v. Jensen*, 238 Neb. 801, 472 N.W.2d 423 (1991); *State v. Long, supra*. However, mere presence at a place where contraband is found is not sufficient to show constructive possession. See *State v. Sherrod, supra*. Instead, the evidence must show facts and circumstances which affirmatively link a defendant to the contraband so as to suggest that he or she knew of it and exercised control over it. See *id.*

It is undisputed that Woodard did not have physical possession of any firearm found over the course of the investigation or the methamphetamine discovered in his residence. The question for this court is whether there is sufficient evidence for a rational fact finder to conclude that he was in constructive possession of the contraband at issue in this case so as to find him guilty beyond a reasonable doubt of the charges.

Turning first to Woodard's conviction for possession of a firearm by a prohibited person, the probation officer discovered the Mauser rifle in the spare bedroom of Woodard's residence that, according to the testimony offered at trial, was primarily used for storage. The rifle was discovered behind the door to the spare bedroom and propped near a shelf containing various other items. In addition to the rifle, officers discovered rifle ammunition in the same room. Woodard explained to law enforcement that his acquaintance, who had also sold Woodard the shotgun and air rifle discovered later in the investigation, had brought the Mauser rifle to Woodard's residence and had forgotten to take the rifle with him when he left. However, we note that in exhibit 14, an excerpt from a jail phone call made on March 15, 2020, Woodard described "the rifles [he] bought" from his acquaintance, including "that rifle that was out there that they got [him] with." In exhibit 20, the excerpt from Woodard's March 15 jail phone call to his father, Woodard stated that he

"told [law enforcement] who [he] bought [the guns] from" and referenced the same acquaintance. From this record, a fact finder could reasonably conclude that Woodard knew of the Mauser rifle in the spare bedroom and that he exercised control over it. The evidence was therefore sufficient to sustain Woodard's conviction for possession of a firearm by a prohibited person.

Regarding Woodard's conviction for possession of methamphetamine, law enforcement discovered methamphetamine and drug paraphernalia in a dresser located in the bedroom used by Woodard and his girlfriend. The drug paraphernalia included multiple glass pipes, and trial testimony indicated that Woodard's girlfriend claimed responsibility for and ownership of "all the various glass pipes" found by law enforcement, including "the marijuana pipes" and "[t]he pipe used for the meth." Law enforcement also found a jewelry box containing a business card bearing Woodard's name, and the card had a "white crystalline substance" on it. The 2.84 grams of a "brown crystalline substance," which tested positive for methamphetamine, was discovered as "another item" in addition to the narcotics equipment; the record does not indicate that either Woodard or his girlfriend claimed ownership of the 2.84 grams of methamphetamine. Moreover, even when considering that Woodard's girlfriend "took responsibility for" and "ownership of" the "various glass pipes," we are not persuaded that her doing so would preclude a fact finder from concluding that Woodard exercised dominion or control over the 2.84 grams of methamphetamine discovered in his primary bedroom. See *State v. Warlick, supra* (two persons may have constructive possession of contraband). The weight to be assigned to that evidence was also a matter solely reserved for the fact finder. See *State v. Figures, supra*. Although Woodard claims the State failed to offer evidence regarding the contents of the dresser that sufficiently linked him to the discovered methamphetamine, the record is clear that Woodard lived at the residence and, together with his girlfriend, used the bedroom where the methamphetamine and other items were discovered as his primary living space. A fact finder could reasonably conclude that Woodard, based on his familiarity with and control over the premises and bedroom he lived in, was aware of and had dominion or control of the methamphetamine discovered in the bedroom dresser. See, *State v. Jensen, supra*; *State v. Long, supra*. Viewing the record in the light most favorable to the prosecution, we conclude the evidence was sufficient to sustain his conviction for possession of methamphetamine.

CONCLUSION

For the reasons set forth above, we find that the evidence was sufficient to sustain Woodard's convictions for possession of a firearm by a prohibited person and possession of methamphetamine, and we affirm Woodard's convictions.

AFFIRMED.