IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BURGHARDT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JOHN J. BURGHARDT, JR., APPELLANT.

Filed March 30, 2021.    Nos. A-20-088 through A-20-091.

Appeals from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

John J. Burghardt, Jr., pled guilty to six felonies in four underlying criminal cases for which the Douglas County District Court sentenced him to various terms of imprisonment. Burghardt claims the district court imposed excessive sentences and his trial counsel was ineffective. We affirm.

## II. BACKGROUND

### 1. CASE NO. A-20-088

On April 3, 2018, the State filed an information in case No. A-20-088 charging Burghardt with: count 1, "Theft by Unlawful Taking $1500 to $5000," a Class IV felony, pursuant to Neb. Rev. Stat. §§ 28-511 and 28-518(2) (Reissue 2016); and count 2, possession of burglar's tools, a Class IV felony, pursuant to Neb. Rev. Stat. § 28-508 (Reissue 2016).

- 1 -

At a hearing on May 10, 2018, Burghardt pled guilty to the two counts above, in exchange for the State dismissing a separate criminal case against him. According to the factual basis provided by the State,

if this matter were to proceed to trial, the State's evidence would prove that on March 29, 2018, officers with the Omaha Police Department were called in regards to a suspicious party. Upon arrival, they located [Burghardt] asleep in a stolen car. Upon . . . speaking with officers, [Burghardt] informed them that he'd taken the car because he was cold and it was rainy. The value of that vehicle . . . was $1,579. In addition, the officers found a screwdriver, pliers, wire cutters and shaved keys among [Burghardt's] possessions in the vehicle.

All events took place in Douglas County, Nebraska.

The district court accepted Burghardt's guilty pleas to the charges in the information and found him guilty of the same. A sentencing hearing was set for August 8, 2018.

On August 8, 2018, the district court issued a bench warrant for Burghardt's arrest after he failed to appear for sentencing. The bench warrant was personally served on Burghardt at "DCDC" on January 15, 2019. Sentencing was eventually set for January 15, 2020.

2. CASES NOS. A-20-089, A-20-090, AND A-20-091

In case No. A-20-089, the State filed an information on March 27, 2019, charging Burghardt with one count of burglary, a Class IIA felony, pursuant to Neb. Rev. Stat. § 28-507 (Reissue 2016).

In case No. A-20-090, the State filed an information on March 27, 2019, and an amended information on October 4, charging Burghardt with: count 1, possession of a stolen firearm, a Class IIA felony, pursuant to Neb. Rev. Stat. § 28-1212.03 (Reissue 2016); count 2, possession of a deadly weapon by a prohibited person, a Class ID felony, pursuant to Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2018); and count 3, "Theft by Receiving $5000 or More," a Class IIA felony, pursuant to Neb. Rev. Stat. §§ 28-517 and 28-518(1) (Reissue 2016).

In case No. A-20-091, the State filed an information on March 27, 2019, charging Burghardt with: count 1, burglary, a Class IIA felony, pursuant to § 28-507; count 2, "Theft by Receiving $5000 or More," a Class IIA felony, pursuant to §§ 28-517 and 28-518(1); count 3, "Attempted Assault on an Officer, Emergency Responder, or Health Care Professional 2nd Degree," a Class IIA felony, pursuant to Neb. Rev. Stat. §§ 28-930 and 28-201(4)(b) (Reissue 2016); count 4, "Operating Motor Vehicle to Avoid Arrest Willful Reckless Driving," a Class IV felony, pursuant to Neb. Rev. Stat. § 28-905(1) and (3)(a)(iii) (Reissue 2016); and count 5, possession of a controlled substance (methamphetamine), a Class IV felony, pursuant to Neb. Rev. Stat. § 28-416(3) (Reissue 2016).

At a hearing on October 28, 2019, details of the plea agreement(s) were set forth on the record. In case No. A-20-089, Burghardt agreed to plead no contest to the sole count of burglary in exchange for the State dismissing a separate criminal case against him. In case No. A-20-090, Burghardt agreed to plead no contest to count 2, possession of a deadly weapon by a prohibited person, in exchange for the State dismissing count 1, possession of a stolen firearm, and count 3,

"Theft by Receiving $5000 or More." In case No. A-20-091, Burghardt agreed to plead no contest to count 1, burglary, and count 2, "Theft by Receiving $5000 or More," in exchange for the State dismissing count 3, "Attempted Assault on an Officer, Emergency Responder, or Health Care Professional 2nd Degree," count 4, "Operating Motor Vehicle to Avoid Arrest Willful Reckless Driving," and count 5, possession of a controlled substance (methamphetamine); additionally, the State agreed to dismiss two separate criminal cases against Burghardt.

Burghardt pled guilty to the sole count of burglary in case No. A-20-089; count 2, possession of a deadly weapon by a prohibited person, in case No. A-20-090; and count 1, burglary, and count 2, "Theft by Receiving $5000 or More," in case No. A-20-091. According to the factual basis provided by the State,

> At [case No. A-20-089], the State's evidence would establish on December 9, 2018, approximately 1:50 a.m., Omaha Police Department was called out to Children's Hospital located at [an address on] Dodge Street. Security guard there, a Michael Carroll (phonetic), had been patrolling the construction site, observed a male party standing near the gate. Asked if he could help that party with anything; that party responded "no." Eventually drove by in a vehicle and left.

> Children's Hospital reviewed security footage which showed that same male arriving in that truck and using bolt cutters to cut the lock to the gate on the construction site of that property and enter on foot. The male eventually returns the bolt cutters to the truck and was then approached by security.

> He was picked out of a photo lineup by that security officer, a Mr. Carroll, and identified as . . . Burghardt . . . . The State's evidence would be that he intended to steal property located at Children's Hospital here . . . in Douglas County, Nebraska.

> With respect to [case No. A-20-090], State's evidence would establish, in the time frame early January 2019, law enforcement was attempting to locate . . . Burghardt. On January 13, 2019, a vehicle belonging to a Brandon Boyd was stolen, a 2002 Ford F-250. Law enforcement eventually locates that stolen vehicle on January 15, 2019 at [a specific address on] Patrick Avenue, here in Douglas County, Nebraska, confirmed that that was, in fact, the same vehicle from the theft report.

> They find -- working it backwards -- do find video of . . . Burghardt driving that same truck on January 14 of 2019. . . . Burghardt is located in the vicinity of that residence and taken into custody on the 15th of January 2019. Located inside the vehicle was a firearm on the passenger's seat of the vehicle. They did make contact with a female party who advised she had been with . . . Burghardt in that truck and had seen him with the firearm.

> That firearm was swabbed and submitted for DNA testing. Testing was done by the University of Nebraska Medical Center. . . . Burghardt was not excluded as a contributor to that profile. The numbers that came back on the DNA profile was 976 quadrillion times more likely that it originated from . . . Burghardt, and two unknown individuals that were unrelated, and it had originated from three unknown, unrelated individuals. All of those events in Douglas County, Nebraska, namely [the specific address on] Patrick Avenue where the gun and truck were located.

- 3 -

At [case No. A-20-091], the State's evidence again would establish, in early January 2019, law enforcement was attempting to locate . . . Burghardt, namely Detective Oliver had been working on that. On January 6, 2019, a vehicle, a 2005 Ford F-250, owned by a Benjamin Watts, was stolen from Council Bluffs, Iowa sometime January 6, 2019, valued at $7,500.

Tracking forward, law enforcement observed that that vehicle was used to break into Bauer Built Tires at [an address on] F Street. On January 10, 2019, a set of new semi tires were stolen from that location, was believed to be done by . . . Burghardt.

Law enforcement located that vehicle later on January 10, 2019 in the area of [an address on] Binney Street, observed that set of six new semi truck tires that appeared consistent with those stolen from the Bauer Built location earlier that day.

[Burghardt] entered his vehicle at that time. Law enforcement did attempt to stop him. He fled the scene of the attempted arrest at that location, did strike Officer Oliver's cruiser.

He . . . was not located at that time, but he . . . was identified as the driver of that vehicle in possession of the truck by Officer Michael Oliver. All those events occurring ultimately in Douglas County, Nebraska, on or about January 10, 2019.

The State also offered a certified copy of a previous felony conviction for Burghardt from July 2015, and it was received without objection. The district court accepted Burghardt's guilty pleas to the counts set forth above and found him guilty of the same. The sentencing hearing was set for January 15, 2020.

### 3. SENTENCING IN ALL CASES

After a hearing on January 15, 2020, the district court entered separate sentencing orders in each case.

In case No. A-20-088, Burghardt was sentenced to 1 to 2 years' imprisonment on both count 1, "Theft by Unlawful Taking $1500 to $5000," and count 2, possession of burglar's tools, with the sentences in the two counts to be served concurrently; he was given credit for 47 days served.

In case No. A-20-089, Burghardt was sentenced to 5 to 6 years' imprisonment for burglary; he was given credit for 365 days served. His sentence was to run consecutive to his sentence in case No. A-20-088.

In case No. A-20-090, Burghardt was sentenced to 8 to 10 years' imprisonment for possession of a deadly weapon by a prohibited person, with the first 3 years' imprisonment being a mandatory minimum. His sentence was to run consecutive to his sentences in cases Nos. A-20-088 and A-20-089.

In case No. A-20-091, Burghardt was sentenced to 5 to 6 years' imprisonment on both count 1, burglary, and count 2, "Theft by Receiving $5000 or More," with the sentences in the two counts to be served concurrently. However, his sentence in case No. A-20-091 was to run consecutive to his sentences in cases Nos. A-20-088, A-20-089, and A-20-090.

Burghardt appeals.

## III. ASSIGNMENTS OF ERROR

Burghardt assigns, consolidated, that (1) the trial court abused its discretion in failing to grant him a term of probation and in imposing an excessive sentence, and (2) his trial counsel was ineffective in (a) the discovery and preparation of his case, (b) recommending he plead guilty without properly testing the DNA evidence, and (c) recommending that he plead guilty without interviewing and deposing the key witness in the possession of a weapon case.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. SENTENCES

In case No. A-20-088, Burghardt was convicted of count 1, "Theft by Unlawful Taking $1500 to $5000," and count 2, possession of burglar's tools; both were Class IV felonies punishable by up to 2 years' imprisonment and 12 months' postrelease supervision, a $10,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Reissue 2016; Cum. Supp. 2020). However, a person sentenced to imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony and sentenced concurrently or consecutively to imprisonment for a Class III, IIIA, or IV felony shall not be subject to postrelease supervision. See § 28-105(6). Additionally, Neb. Rev. Stat. § 29-2204.02(4) (Reissue 2016) provides in relevant part that for any sentence of imprisonment for a Class III, IIIA, or IV felony for an offense committed on or after August 30, 2015, imposed consecutively or concurrently with a sentence of imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony, the court shall impose an indeterminate sentence that does not include a period of postrelease supervision. Because Burghardt was sentenced to imprisonment on Class IV felonies in case No. A-20-088, and was also sentenced to consecutive terms of imprisonment for Class IIA felonies in cases Nos. A-20-089 and A-20-091, as well as a consecutive term of imprisonment for a Class ID felony in case No. A-20-090, he was not subject to postrelease supervision in case No. A-20-088. Burghardt was sentenced to 1 to 2 years' imprisonment on each count in case No. A-20-088, with the sentences in the two counts to be served concurrently. These sentences were within the statutory range.

In case No. A-20-089, Burghardt was convicted of one count of burglary, a Class IIA felony, which was punishable by up to 20 years' imprisonment. See § 28-105. He was sentenced

to 5 to 6 years' imprisonment, and his sentence was to run consecutive to his sentence in case No. A-20-088. This sentence was within the statutory range.

In case No. A-20-090, Burghardt was convicted of one count of possession of a deadly weapon by a prohibited person, a Class ID felony, which was punishable by a mandatory minimum of 3 years' imprisonment and a maximum of 50 years' imprisonment. See § 28-105. And a person convicted of a felony for which a mandatory minimum sentence is prescribed shall not be eligible for probation. § 28-105(4). He was sentenced to 8 to 10 years' imprisonment, with the first 3 years' imprisonment being a mandatory minimum. His sentence was to run consecutive to his sentences in cases Nos. A-20-088 and A-20-089. This sentence was within the statutory range.

In case No. A-20-091, Burghardt was convicted of count 1, burglary, and count 2, "Theft by Receiving $5000 or More"; both were Class IIA felonies which were punishable by up to 20 years' imprisonment. See § 28-105. He was sentenced to 5 to 6 years' imprisonment on each of the two counts, with the sentences in the two counts to be served concurrently. However, his sentence in case No. A-20-091 was to run consecutive to his sentences in cases Nos. A-20-088, A-20-089, and A-20-090. These sentences were within the statutory range.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* It is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017).

Burghardt was 39 years old at the time of sentencing. According to the presentence investigation report, Burghardt was single and had four children. He had completed his GED, and had not worked for the last 5 years because he was "'really into [his] addiction'" and could not keep a job. His parents had both had addiction issues. He told the probation officer that he would like to become a licensed alcohol and drug counselor.

Burghardt had some juvenile history which we will not recount here. His adult criminal history includes convictions for attempted possession of a controlled substance (amended from possession with intent to deliver -- cocaine) in 1999 for which he was sentenced to 6 months in jail; aggravated assault (amended from "Assault Serious") in 2000 for which he was sentenced to 21 days in jail with 1 year of probation; obstructing the administration of the law (amended from theft by receiving stolen property) in 2000 for which he was sentenced to 90 days in jail; operating a motor vehicle without consent (amended from theft -- second degree) in 2001 for which he was sentenced to 365 days of probation and 2 years in prison suspended (probation revoked in 2003); burglary in the third degree in 2001 for which he was sentenced to 730 days in jail; attempted manufacturing of methamphetamine (amended from manufacturing methamphetamine) in 2001 for which he was sentenced to 6 months in jail; public intoxication and eluding a police officer in 2004 for which he was fined; driving while license is denied, suspended, or revoked in 2004 for which he was fined; operating during suspension, 2 or more offenses, in 2005 for which he was

sentenced to 5 days in jail; disturbing the peace in 2005 for which he was fined; driving under the influence, greater than .08, in 2005 for which he was fined and sentenced to 30 days in jail; reckless driving in 2005 for which he was sentenced to 30 days in jail; driving while intoxicated, second offense, in 2006 for which he was sentenced to 30 days in jail suspended, 365 days of probation (probation violation filed in 2008; sentenced to 30 days in jail with credit for 17 days served); operating during suspension, two or more offenses in 2006 for which he was sentenced to 4 days in jail; driving under suspension in 2006 for which he was fined and his license was revoked for 1 year; criminal mischief, fourth degree, in 2006 for which he was sentenced to 1 year in jail; "Domestic Abuse Assault Without Intent Causing Injury" in 2007 for which he was sentenced to 30 days in jail; attempted burglary (amended from burglary) in 2009 for which he was sentenced to 5 years of probation and restitution; theft, third degree, in 2012 for which he was fined, sentenced to 180 days in jail with 166 days suspended; operating during suspension and failure to appear in 2012 and 2013 for which he was sentenced to 5 days in jail and 7 days in jail respectively; domestic violence assault in the third degree in 2013 for which he was sentenced to 90 days in jail with 16 months of probation; theft by unlawful taking in 2013 for which he was sentenced to 7 days in jail; domestic violence assault in the third degree -- first offense (amended from domestic violence assault in the second degree -- second offense) in 2014 for which he was sentenced to 300 days in jail; theft by receiving stolen property -- $500 to $1,500 (amended from theft by receiving stolen property -- over $1,500) in 2014 for which he was sentenced to 365 days in jail; theft by shoplifting -- $0 to $200 in 2015 for which he was sentenced to 14 days in jail; possession of a controlled substance in 2015 for which he was sentenced to 180 days in jail; shoplifting in 2016 for which he was sentenced to 13 days in jail; theft by unlawful taking in 2017 for which he was sentenced to 15 days in jail; and "Theft -- Third Degree -- Generally Over $500 or Under $1,000 (amended from "Theft -- Second Degree") in 2017 for which his fine was suspended and he was sentenced to 90 days in jail. Additionally, he was fined for various traffic offenses over the years. Burghardt's current offenses were set forth previously.

According to the presentence investigation report, Burghardt was out on bond for a 2018 shoplifting charge when he was charged with his current offenses. Burghardt has been written up while confined in jail for assault, smoking marijuana, and not complying with instructions from guards; at the sentencing hearing, Burghardt denied that he had ever been written up for smoking marijuana while incarcerated. Additionally, he had a charge of assault by a confined person dismissed while incarcerated this time.

The probation officer conducted a "Level of Service/Case Management Inventory." Burghardt was assessed as a "very high risk" to re-offend. He scored "very high" in the criminogenic risk factor domains for criminal history, family/marital, companions, alcohol/drug problem, and antisocial pattern. He scored "high" risk in the domains for education/employment, leisure/recreation, and procriminal attitude/orientation. The probation officer stated:

> At this time, this officer believes Mr. Burghardt is much too high of a risk for community supervision, even without the Class I-D Felony listed as a charge. Mr. Burghardt did not show up for sentencing for [case No. A-20-088], essentially went on the run and then obtained four new felonies. He has no regard for society or the law when given his freedom. Mr. Burghardt puts himself and others at risk with his dangerous

lifestyle. At this time, a straight sentence of incarceration is recommended, a length of time that will hold Mr. Burghardt accountable for his actions, teach him to take responsibility for the lifestyle and choices he is making, and hopefully make him a more productive citizen. Consecutive sentences are recommended.

At the sentencing hearing, Burghardt's counsel argued that Burghardt had long struggled with addiction to cope with a lack of self-worth that was instilled in him as a child. Addressing the "gun charge," counsel stated that Burghardt "had no intention of using the gun to commit any types of violence against anyone[,] [i]t was just something that he had acquired because of his other criminal actions in taking these vehicles." Burghardt wants to get sober and become a drug and alcohol counselor one day; he wants to make himself a better man and be a productive member of society. Counsel requested a "minimal sentence" so that Burghardt could fulfill some of his goals.

Burghardt personally addressed the district court and acknowledged that he had "made some horrible choices." He stated, "I realize there are consequences for my actions, but I stand before you a different man, a man, as of today, with exactly 365 days of continued sobriety. I haven't had that 365 days since I was 20 years old." After his arrest he participated in various programs, including restorative justice, anger management, and reactive behavior. He also attended "NA and AA" meetings. He plans to better himself for his reentry into society.

The State noted that Burghardt had a felony case pending and that the district court gave him the opportunity to get out and go to treatment in case No. A-20-088, but that Burghardt did not show up for sentencing; "[a]nd then [he] essentially went on a crime spree from the time he wasn't at sentencing until the time he was finally arrested by law enforcement." The State further noted that when Burghardt "was contacted one of these times by law enforcement he flees from law enforcement, rams a police cruiser, putting himself and law enforcement at risk," and "[h]e then is found later in another stolen vehicle after that incident." The State argued that Burghardt's criminal history shows that he has a "complete and total disrespect from the law" and that he "is absolutely a danger to society." The State asked the district court to impose a "straight sentence on all these counts and they all be consecutive" because they are different criminal actions on different dates and involve separate victims.

The district court sentenced Burghardt as set forth previously.

Burghardt contends that "the [c]ourt should have looked for some kind of a blended sentence where after the mandatory minimum time he was to serve he would be granted probation on the balance of the sentences"; he notes his remorse, addiction issues, and desire to change in support of a sentence of probation. Brief for appellant at 21. Additionally, he argues that his aggregate sentence was "disproportionate to the crime and [h]is desire to change." *Id*. at 29.

The district court did not explicitly set forth why it sentenced Burghardt to terms of imprisonment for each count rather than probation for some counts. See Neb. Rev. Stat. § 29-2260 (Reissue 2016) (factors favoring withholding sentence of imprisonment). However, we have considered the relevant factors in this case and find that the court did not abuse its discretion when it did not sentence Burghardt to probation for any of his crimes. Additionally, we have considered the relevant factors from *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017), and we find that Burghardt's sentences were not excessive or an abuse of discretion and his sentences are therefore

affirmed. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court).

## 2. EFFECTIVENESS OF COUNSEL

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Burghardt claims his trial counsel was ineffective. He is represented on direct appeal by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman, supra*. Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.* In *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019), the Nebraska Supreme Court stated, "We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity."

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

Keeping those governing principles of law in mind, we turn to address Burghardt's claims that his trial counsel was ineffective in the discovery and preparation of his case, recommending he plead guilty without properly testing the DNA evidence, and recommending that he plead guilty without interviewing and deposing the key witness in the possession of a weapon case.

## (a) Discovery and Preparation

Burghardt assigns that his trial counsel was ineffective in the "[discovery and preparation of his case]." We conclude that this claim, in part, does not meet the specificity requirement of *State v. Mrza, supra*. To the extent that the argument section of Burghardt's brief suggests that certain motions should have been filed and were not, like a motion to suppress to challenge the voluntariness of Burghardt's confession in case No. A-20-088, such a claim was not specifically assigned as error and will not be considered. See *id.* (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

To the extent that Burghardt argues that trial counsel did not adequately share discovery with him and failed to involve him sufficiently to prepare a defense, we find that such claims are sufficiently alleged, but that the record is insufficient to reach these claims on direct appeal; these claims are preserved.

## (b) DNA Evidence

Burghardt assigns that his trial counsel was ineffective in recommending he plead guilty without properly testing the DNA evidence. Although he does not specify as to which case and charge he is referring, his argument focuses on DNA related to his firearm possession charge, and we consider his argument accordingly. He contends that relatively new technology "puts his DNA on the gun in the truck," and he made it clear to trial counsel that he wanted the DNA evidence challenged and that he also wanted counsel to "obtain an expert on the transfer of DNA, so called touch DNA." Brief for appellant at 34. He further argues that he had no direct contact with the weapon and that "the DNA transfer occurred by [his girlfriend] Monique who admitted driving the truck and was in the truck where the gun was found." *Id.* at 35. He claims he told trial counsel that the night before the incident and before Monique drove the truck, he had sex with her "and that there was a good deal of DNA transfer." *Id.* He acknowledges that "[t]here was a motion for retesting but there was no motion made to hire an expert in order to address the testing as it stood." *Id.* Burghardt says he wanted a retest to make sure the first test was accurate, and he wanted an expert to explain that "just because his DNA was on an item, it is not conclusive that he touched that item." *Id.* at 36. He claims that with "properly hired experts[,] he would have insisted on going to trial." *Id.* at 37.

However, Burghardt does not explain how even a successful challenge to the DNA on the firearm changes the fact that the firearm was in the truck he had been driving and that a "female party" advised law enforcement that she had been with Burghardt in the truck and had seen him with that firearm. Additionally, according to the presentence investigation report, Burghardt explained that he was living on the streets and that he stole cars to live in, and that one of the trucks he stole had a gun inside of it which he just left in the truck.

- 10 -

Burghardt was charged and convicted of possession of a deadly weapon by a prohibited person under § 28-1206. As pertinent here, § 28-1206 provides that "[a] person commits the offense of possession of a deadly weapon by a prohibited person if he . . . [p]ossesses a firearm . . . and he . . . [h]as previously been convicted of a felony[.]" Burghardt does not challenge that he was a prohibited person. The factual basis for this charge indicates that there was video of Burghardt driving a stolen 2002 Ford F-250 on January 14, 2019, which was located the next day at an address on Patrick Avenue and at which time Burghardt was located in the vicinity of that residence and taken into custody. A firearm was located on the passenger's seat in the vehicle, and "a female party . . . advised she had been with . . . Burghardt in that truck and had seen him with the firearm." Also, as noted, Burghardt himself acknowledged during his presentence investigation interview that he left a gun inside of one of the trucks he had stolen. The firearm was swabbed and submitted for DNA testing which could not exclude Burghardt as a contributor.

Regardless of the DNA evidence on the firearm, there was other evidence to establish Burghardt's constructive possession of the firearm. See *State v. Long*, 8 Neb. App. 353, 594 N.W.2d 310 (1999) (possession of firearms by felon established by proof defendant had physical or constructive possession with knowledge of presence of firearms in home even though defendant claimed he was no longer living there; possession may be proved by circumstantial evidence, and defendant's control or dominion over premises where firearms located sufficient to uphold conviction). Trial counsel cannot be deficient for failing to retest the DNA or retaining a DNA expert to challenge the incriminating DNA test when video evidence also placed Burghardt in the truck in which the firearm was discovered, a witness claimed to have been in that truck with Burghardt and to have seen him with the firearm, and Burghardt himself acknowledged leaving a gun inside one of the trucks he had stolen. The fact that Burghardt may not have had direct contact with the gun is irrelevant to whether he was in constructive possession of the gun, and therefore, we cannot say that trial counsel's decision related to further DNA testing or hiring a DNA expert was outside the range of competence demanded of attorneys in criminal cases. Further, Burghardt had numerous charges pending against him, many of which were dismissed as part of plea agreements, thus, Burghardt would be unable to establish prejudice since there is no reasonable probability that he would have insisted on going to trial even if he could have successfully challenged the presence of DNA on the firearm. As discussed, the lack of DNA evidence alone would not necessarily have defeated the firearm possession charge. This claim of ineffective assistance of trial counsel fails.

(c) Key Witness

Burghardt asserts that his trial counsel was ineffective in recommending that he plead guilty without interviewing and deposing the key witness in the possession of a weapon case. He claims this alleged deficiency "goes hand in hand with the lack of a DNA expert" in case No. A-20-090. Brief for appellant at 38. Burghardt argues that in phone calls from jail to his girlfriend Monique, she "admits that she got the truck and she had the gun." *Id.* He claims that Monique "was in possession and control of the truck and lied to officers when they interviewed her to save her own skin." *Id*. He suggests that the phone calls between Burghardt and Monique when he was in jail were obtained and transcribed by trial counsel, and that they support Monique "saying that

she was going to clear up the record on this issue and the fact that she had brought the truck near to her residence." *Id*. Burghardt claims trial counsel did not contact Monique, nor motion to take her deposition. He contends he urged trial counsel throughout his representation "to press this issue with Monique to prove his innocence as to all of the charges at A-20-90." *Id*. at 39. All charges pending in that case included possession of a stolen firearm, possession of a deadly weapon by a prohibited person, and theft by receiving stolen property valued at $5,000 or more.

At the plea hearing on October 28, 2019, the district court specifically advised Burghardt that he had the right to require witnesses to be present at any hearing or trial by subpoena, if necessary, at no cost to him, and to have such witnesses testify on his behalf. Burghardt stated he understood those rights and acknowledged that by pleading guilty he would be giving up those rights and the court would proceed to a judgment of conviction and sentence without a trial. Burghardt never expressed any concern that his trial counsel failed to talk to Monique as he had requested, and that his innocence in case No. A-20-090 could have been established through her testimony. In fact, when asked if he was satisfied with his trial counsel and whether Burghardt had been properly represented throughout the proceedings, Burghardt responded, "Yes, Your Honor." Nevertheless, he now contends his trial counsel performed deficiently by failing to contact or depose Monique, a potential witness.

As previously noted, there is video evidence putting Burghardt in the stolen truck the day prior to the discovery of the truck and firearm. Also, as discussed above, whether Burghardt's DNA was on the firearm or not was not necessary to a conviction for possession of a firearm by a prohibited person given the other evidence that "a female party . . . advised she had been with . . . Burghardt in that truck and had seen him with the firearm." However, if trial counsel had information that Monique was that female party, and the transcript of her conversations with Burghardt when he was in jail raised issues as to her veracity with law enforcement with regard to "all of the charges at A-20-90," brief for appellant at 39, then there is a question of whether trial counsel's failure to contact or depose Monique equaled that of a lawyer with ordinary training and skill in criminal law. However, the record before us is not sufficient to answer that question. Accordingly, we find that this claim of ineffective assistance of trial counsel was sufficiently alleged and this claim is preserved.

## VI. CONCLUSION

For the reasons stated above, we affirm Burghardt's convictions and sentences. As for Burghardt's claims of ineffective assistance of trial counsel, the record is sufficient to address Burghardt's claim related to additional DNA testing or obtaining a DNA expert and we find this claim fails; the record is insufficient to address Burghardt's remaining claims.

AFFIRMED.