IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LOCKMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

STEPHEN J. LOCKMAN, APPELLANT.

Filed February 24, 2026.    No. A-25-240.

Appeal from the District Court for Scotts Bluff County: ANDREA D. MILLER, Judge. Affirmed.

Andrew W. Snyder, of Holyoke, Snyder, Longoria, Reichert & Rice, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

MOORE, BISHOP, and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Stephen J. Lockman appeals his convictions for possession of fentanyl with intent to distribute; possession of methamphetamine with intent to distribute, more than 140 grams; failure to affix drug tax stamp; and tampering with evidence, following a jury trial in Scotts Bluff County District Court. Lockman argues that the district court erred in preventing additional impeachment evidence of a witness, that the evidence was insufficient to support his convictions, and that his trial counsel was ineffective for failing to renew his motion to suppress. We affirm.

## II. STATEMENT OF FACTS

In June 2024, Lockman enlisted a former girlfriend, Jennifer Radomski, to accompany him to Colorado to pick up 2 pounds of methamphetamine and over 1,000 fentanyl pills. Upon

returning to Scotts Bluff County, their vehicle was stopped by law enforcement. Relying on information provided by Radomski, the methamphetamine and fentanyl pills were recovered and confirmed to be controlled substances through laboratory testing.

On July 10, 2024, Lockman was charged by information with possession of a controlled substance (fentanyl) with intent to distribute, a Class II felony in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 2024); possession of a controlled substance (methamphetamine) with intent to distribute, more than 140 grams, a Class IB felony in violation of Neb. Rev. Stat. § 28-416(10)(a); failure to affix drug tax stamp, a Class IV felony in violation of in violation of Neb. Rev. Stat. § 77-4309 (Reissue 2018); and tampering with evidence for a Class II felony or higher, a Class II felony in violation of Neb. Rev. Stat. § 28-922(3)(b) (Cum. Supp. 2024).

1. MOTION TO SUPPRESS

On October 11, 2024, Lockman filed a motion to suppress "all fruits of the illegal search and arrest." Lockman challenged law enforcement's ability to perform an investigatory stop of the vehicle and the subsequent search resulting from the stop.

The district court held a hearing on Lockman's motion to suppress on November 13, 2024. Kristen Massie, an investigator with the Gering Police Department, testified that she is a member of the Western Intelligence Narcotics Group (WING) Drug Task Force. As part of Massie's work with WING, she coordinates with cooperating individuals, who then participate in controlled buys, as well as surveillance and interviews. Since April 2024, Radomski had been working with Massie as a cooperating individual to "work off" her own criminal charge. Prior to the events at issue, Radomski had provided reliable information to Massie that led to an arrest for the distribution of narcotics.

On June 18, 2024, Radomski informed Massie that Lockman had asked Radomski to accompany him to Colorado to "help him bring stuff back." Massie attempted to meet with Radomski and, while she was on her way, Massie observed Lockman get into a black Toyota Corolla with Michigan license plates. Massie also observed the vehicle parked outside of Radomski's home that same day. A contract demonstrating that the vehicle was an Enterprise rental car was entered into evidence at the suppression hearing. The contract stated that the vehicle had been rented to Josh Harshbarger on June 10 and reflected no additional authorized drivers. On June 23, following the events in this case, Harshbarger reported that a black Toyota Corolla with Michigan license plates owned by Enterprise had been stolen by Lockman.

When Massie later contacted Radomski on June 18, 2024, she told Radomski that due to the short notice of Lockman's trip, there was not enough time to arrange for the cooperation of other jurisdictions necessary for a controlled environment. Concerned for Radomski's safety, Massie instructed Radomski that she should stay in the area. A series of text messages between Radomski and Massie from this time was entered into evidence. In one of the messages Massie sent to Radomski on June 18, she stated, "Do not go!! I can't keep u from getting charged even if it's in NE."

Radomski ultimately accompanied Lockman on his trip to Colorado over June 18 and 19, 2024. While Radomski was in Colorado, she stayed in communication with Massie and reported over a phone call and text message that there were drugs in the vehicle, including roughly a pound of methamphetamine and 2,000 "blues."

The following day, Radomski called Massie to report that she and Lockman would be driving through Kimball, Nebraska, on their return trip. Massie waited in the area and observed a black Toyota Corolla with Michigan license plates drive into Kimball. Massie observed Radomski to be driving the vehicle and Lockman to be the passenger. The vehicle stopped at a gas station, where Radomski went inside to call Massie. Over the phone, Radomski reported being scared and that there was a large quantity of drugs in the vehicle. Massie encouraged Radomski to continue driving the vehicle. When the call concluded, Radomski got back into the driver's seat and Lockman into the passenger's seat, and the vehicle drove out of Kimball.

Massie continued to surveil the vehicle until it turned onto a county road. Massie communicated the direction the vehicle was traveling as well as its identifying features to other WING officers in the area.

Trooper Marco Vera Chavez, with the Nebraska State Patrol, testified that on June 19, 2024, he was patrolling in Scotts Bluff County. He was contacted by Investigator David Hunter, who advised Vera Chavez that a black Toyota Corolla with Michigan license plates was leaving Kimball and transporting methamphetamine and fentanyl pills. Vera Chavez soon identified the vehicle and began following it on the county road. At some point the vehicle signaled a turn into what appeared to be an abandoned house, and Vera Chavez initiated an investigatory stop based on the information provided to him by Hunter. The vehicle had not committed a traffic violation. Vera Chavez activated his in-car camera and his body-worn camera, and footage from both was entered into evidence.

During the investigatory stop, Radomski exited the vehicle from the driver's side. She gave Vera Chavez consent to search her purse, which contained a broken methamphetamine pipe. Vera Chavez also found 54 fentanyl pills on Radomski's person. Radomski was then placed under arrest and taken to a patrol vehicle, where she explained to Vera Chavez that she was working with Massie. Radomski told Vera Chavez that drugs were hidden inside the vehicle's dashboard. A search of the vehicle produced two bags of a crystalline substance, approximately 900 grams in total, from the dashboard behind the vehicle's radio system. The substance field-tested positive for methamphetamine.

Radomski also told Vera Chavez that Lockman had thrown a package containing fentanyl out of the window of the vehicle. Radomski provided an initial description of where Lockman had discarded the package. After a 15-minute search, Vera Chavez asked Radomski for a more detailed description of the location where Lockman had discarded the package, and the package was recovered by law enforcement in a field to the side of the county road. The package contained 1,012 suspected fentanyl pills.

In an order entered on December 12, 2024, the district court overruled Lockman's motion to suppress. The court found that the information provided to Vera Chavez established reasonable suspicion, supported by articulable facts, that criminal activity existed. Radomski had provided credible statements to law enforcement detailing the steps taken by Lockman to transport the narcotics in the vehicle, as well as the type and quantity of narcotics. The vehicle used by Radomski and Lockman had been observed by officers to be driven by Lockman prior to the trip to Colorado. This information, along with officers seeing Radomski and Lockman together at the gas station in Kimball, provided the necessary reasonable suspicion to briefly perform an investigatory stop. The court also found that because Lockman was not the owner, registered user,

or driver of the vehicle when it was stopped, Lockman had failed to establish a sufficient connection with the vehicle to have standing to challenge the search of the vehicle itself.

## 2. TRIAL

A jury trial was held on January 28 and 29, 2025. Though Lockman made several objections to exhibits to "preserve our motion," Lockman did not make general objections to the testimony offered by law enforcement officers or seek a continuing objection based upon the motion to suppress.

Both Massie and Vera Chavez testified consistently with their testimony at the suppression hearing. The following evidence was also adduced.

Radomski testified that on June 18, 2024, she and Lockman drove to a commercial area of Aurora, Colorado. Radomski went inside a store to purchase some beverages, and when she returned, there was another man inside of the vehicle. Lockman and the man had a conversation before the man left the vehicle, returning 5 minutes later to give Lockman "the rest of the drugs." Though Lockman had told Radomski that they were in Colorado to retrieve "roughly 2 pounds and 2,000 fentanyl," Radomski did not see the drugs, as they were in a speaker box in the trunk of the vehicle. After this transaction, Lockman and Radomski left the area in their vehicle.

Radomski testified that Lockman then removed the disc player and radio from the dashboard of the vehicle and hid two bags of methamphetamine behind the dashboard before remounting the disc player and radio. Lockman also told Radomski to keep some of the fentanyl pills on her person because if the police were to find the small amount on her, they would not go on to search the vehicle. Radomski placed some of the fentanyl pills in a small envelope that she then tucked inside of her bra. Radomski packaged the remainder of the fentanyl pills into a singular parcel that was kept within her and Lockman's reach during their return trip.

While Lockman was working to place the methamphetamine behind the vehicle's dashboard, Radomski used her cell phone to make a video of Lockman's actions at 10:32 a.m. on June 19, 2024. The video briefly captures an individual from the waist down, but the face is not shown. Radomski's video was entered into evidence and shows a bag of methamphetamine sitting on an individual's lap while in the driver's seat of a vehicle. The vehicle's disc player had been removed and was hanging down from the dashboard. In the video, a man's voice is heard saying, "[Y]ou didn't know there was that much in there?" Then he says, "[T]hat's only one bag." Radomski later provided this video to Massie.

Hunter testified that he was familiar with Lockman's voice after having listened to several of Lockman's jail calls. Based on that familiarity with his voice, Hunter identified the voice in Radomski's video as Lockman's.

Massie and Radomski testified consistently with Massie's prior testimony at the suppression hearing regarding Radomski's contact with Massie while she was in Colorado and on the drive back to Nebraska.

Radomski testified that after leaving Kimball and driving on the county road, she observed a state trooper turn around and follow their vehicle. She then told Lockman to throw the fentanyl pills out of the vehicle. Radomski saw Lockman throw the package of fentanyl out of the vehicle's window. Vera Chavez testified that he did not see a package being thrown out of the vehicle.

During cross-examination, Radomski acknowledged that she had been convicted of a crime of dishonesty. Lockman attempted to question her further about the details of that conviction, but

- 4 -

when the State objected based on improper impeachment, the objection was sustained by the district court, and additional questioning of the underlying details of that offense was not permitted.

Caitlyn Wensel, a forensic scientist with the Nebraska State Patrol crime lab, testified that the suspected drugs recovered from the vehicle and the field were tested. Wensel confirmed that the two bags found behind the vehicle's dashboard contained 444.02 grams and 441.95 grams of methamphetamine, respectively. She also confirmed that the pills found inside the discarded package contained fentanyl.

Trooper Juan Garfio of the Nebraska State Patrol, who arrived on the scene to assist Vera Chavez in the search of the vehicle, testified that the two bags of methamphetamine did not have a drug tax stamp. Massie testified that she processed the fentanyl evidence, and there was likewise no drug tax stamp on the package of 1,012 fentanyl pills. Massie stated that based on her experience as a drug investigator with the WING drug task force, over 800 grams of methamphetamine and more than 1,000 fentanyl pills are distribution quantities of those controlled substances.

### 3. VERDICT AND SENTENCING

After deliberating for an hour, the jury found Lockman guilty of all four counts. The jury determined that Lockman was in possession of 885 grams of methamphetamine. The district court accepted the jury's verdict and found Lockman guilty of the four counts.

A sentencing hearing was held on March 28, 2025. The district court sentenced Lockman to a term of 8 to 10 years' imprisonment for possession of fentanyl with intent to distribute; to 30 to 40 years' imprisonment for possession of methamphetamine with intent to distribute, more than 140 grams; to 2 to 2 years' imprisonment for failure to affix a drug tax stamp; and 2 to 4 years' imprisonment for tampering with evidence. The court ordered the sentences to be served concurrently and awarded 283 days credit for time served as to Lockman's conviction of possession of fentanyl with intent to distribute.

Lockman appeals.

### III. ASSIGNMENTS OF ERROR

Lockman assigns, restated and consolidated, that the district court erred in (1) preventing additional impeachment evidence of Radomski, (2) finding there was sufficient evidence to sustain each of Lockman's convictions, and (3) denying Lockman's motion for directed verdict. Lockman also assigns (4) that trial counsel was ineffective in failing to renew his motion to suppress.

### IV. STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025).

In reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

In an appellate court's consideration of a criminal defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence. *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021).

An appellate court resolves claims of ineffective assistance of counsel on direct appeal only where the record is sufficient to conclusively determine whether trial counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance as matters of law. *State v. Kruger, supra*. Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *Id*.

## V. ANALYSIS

### 1. IMPEACHMENT EVIDENCE

Lockman first assigns that the district court erred in sustaining the State's objection to impeachment questions directed to Radomski. Lockman contends that he should have been permitted to cross-examine Radomski regarding the details of her conviction of a crime of dishonesty. Lockman asserts that this cross-examination would have elicited testimony regarding Radomski's "previous efforts to get Lockman in trouble with the law." Brief for appellant at 21. Lockman argues that this impeachment of Radomski could have led a reasonable juror to conclude that Radomski was again lying about the circumstances of the offense to evade punishment while blaming Lockman.

Neb. Rev. Stat. § 27-609(1) (Reissue 2016), provides for the impeachment of a witness on cross-examination when the witness has committed a felony or a crime of dishonesty. After the conviction is established, "'the inquiry must end there, and it is improper to inquire into the nature of the crime, the details of the offense, or the time spent in prison as a result thereof.'" *State v. Castillo-Zamora*, 289 Neb. 382, 388, 855 N.W.2d 14, 22 (2014) (quoting *State v. Johnson*, 226 Neb. 618, 413 N.W.2d 897 (1987)). The inquiry is restricted, because a witness' conviction of a crime is meant to be used for whatever effect it has on only the credibility of the witness, and it is not meant to otherwise impact the jury's view of the character of the witness. See *State v. Castillo-Zamora, supra*.

At trial, Lockman properly impeached Radomski by asking whether she had previously been convicted of a felony or crime of dishonesty. Lockman then began to ask Radomski whether the crime involved a false report on Lockman, to which the State objected. The district court sustained the objection on the grounds that § 27-609(1) permits an inquiry only into whether the witness has a felony conviction or a crime of dishonesty, and that "[d]iving into the convictions, the type of convictions, the nature of the convictions, has been disallowed in Nebraska[.]"

Once Lockman had established Radomski's conviction, the inquiry should have ceased. It was improper for Lockman to continue the inquiry and ask about the nature of Radomski's conviction after she had been impeached. As such, the district court did not err when it sustained the State's objection to the further questioning of Radomski regarding the nature of her previous conviction.

## 2. SUFFICIENCY OF EVIDENCE

Lockman argues that the evidence was insufficient to support any of his four convictions. We address each in turn.

### (a) Possession With Intent to Distribute

Lockman asserts that the trial evidence was insufficient to support his two convictions for possession with intent to distribute fentanyl and possession with intent to distribute methamphetamine, over 140 grams, because Radomski was a cooperating individual under Neb. Rev. Stat. § 28-1439.01 (Reissue 2016) and her testimony was not sufficiently corroborated as required by the statute.

Nebraska law provides, "No conviction for an offense punishable under any provision of the Uniform Controlled Substances Act shall be based solely upon the uncorroborated testimony of a cooperating individual." § 28-1439.01. Under the Uniform Controlled Substances Act, corroboration is sufficient to satisfy the requirement that a conviction not be based solely upon uncorroborated testimony of an individual cooperating with the prosecution if the witness' testimony is corroborated as to material facts and circumstances that tend to support the testimony as to the principal fact in issue. *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018), *modified on denial of rehearing* 302 Neb. 492, 924 N.W.2d 64 (2019). Testimony of a cooperating individual need not be corroborated on every element of a crime. *Id*.

For § 28-1439.01 to apply, the person testifying must be a "cooperating individual." Neb. Rev. Stat. § 28-401(27) (Cum. Supp. 2024) provides, "Cooperating individual means any person, other than a commissioned law enforcement officer, who acts on behalf of, at the request of, or as agent for a law enforcement agency for the purpose of gathering or obtaining evidence of offenses punishable under the Uniform Controlled Substances Act."

As the district court noted at trial, there is a question as to whether Radomski was acting as a cooperating individual in this case. Radomski was signed up to act as a confidential informant with Massie in April 2024 and was attempting to work off criminal charges as part of this arrangement. However, in June, Radomski was explicitly instructed by Massie not to accompany Lockman on his trip to Colorado. Massie told Radomski that she was not approved to conduct this operation, and text messages where Massie urged Radomski not to go were entered into evidence. Despite these communications from Massie, Radomski decided to accompany Lockman on his trip to Colorado. Thus, Radomski was not explicitly acting at the request of law enforcement when she accompanied Lockman on his trip to Colorado. However, even assuming without deciding that Radomski was acting as a cooperating individual pursuant to § 28-401(27), there was sufficient corroboration of her testimony at trial to support Lockman's convictions for possession with intent to distribute.

Possession with intent to distribute is set out in Neb. Rev. Stat. § 28-416 (Cum. Supp. 2024). The relevant portion provides: "[I]t shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance." § 28-416(1).

Thus, the State had to show that Lockman knowingly or intentionally possessed both the fentanyl and methamphetamine with an intent to deliver or distribute it. For crimes under the criminal narcotics statutes, Nebraska common law recognizes both actual and constructive

possession. See *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021). Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it. *Id*. Mere presence at a place where a controlled substance is found is not sufficient to show constructive possession. *State v. Sherrod*, 27 Neb. App. 435, 932 N.W.2d 880 (2019). Instead, "the evidence must show facts and circumstances which affirmatively link [the suspect] to the [narcotic] so as to suggest that he [or she] knew of it and exercised control over it." *Id*. at 442, 932 N.W.2d at 888.

Radomski's video, which was created on June 19, 2024, shows an individual sitting in the driver's seat of a vehicle with a bag on his lap and the vehicle's disc player disconnected and hanging from the dashboard. The individual's statement refers to the amount as being only one bag, suggesting that there may have been more. Two bags of methamphetamine were later recovered from behind the dashboard of the vehicle in which Lockman was a passenger. Additionally, Hunter identified the voice in the video as belonging to Lockman. Possession of an illegal substance can be inferred from a vehicle passenger's proximity to the substance or other circumstantial evidence that affirmatively links the passenger to the substance. *State v. Warlick, supra*.

Also, during the investigative stop, Radomski advised Vera Chavez where Lockman had discarded a package of fentanyl pills out of the vehicle's window. After providing additional detail regarding the location, the fentanyl pills were found where Radomski had described.

Lab testing confirmed the substance removed from behind the vehicle's dashboard was over 885 grams of methamphetamine, and the over 1,000 pills recovered from the roadside were confirmed to be fentanyl. Massie testified that based on her experience, the amounts constituted distribution quantities of those controlled substances.

The facts presented at trial, viewed in the light most favorable to the State, show that Lockman did possess with intent to distribute more than 140 grams of methamphetamine, and he did possess with intent to distribute fentanyl. The evidence that establishes Lockman's knowledge of the presence and character of the controlled substances, as well as his dominion over them, was corroborated by evidence other than Radomski's testimony, and it was sufficient to support the jury's guilty verdicts on those counts.

(b) Failure to Affix Drug Tax Stamp

Lockman was also charged with failure to affix a drug tax stamp in violation of § 77-4309, which states in relevant part: "A dealer distributing or possessing marijuana or a controlled substance without affixing the official stamp, label, or other indicium shall be guilty of a Class IV felony."

Massie testified that there was no drug tax stamp on the fentanyl pills and Garfio testified that the two bags of methamphetamine also did not have a drug tax stamp. Evidence at trial did not provide any other indication that the required tax had been paid. The forensic scientist testified that the substance in the two bags was methamphetamine. She also confirmed that the pills were fentanyl. Both methamphetamine and fentanyl are controlled substances.

As found above, the evidence established that Lockman was in possession of the fentanyl and methamphetamine with an intent to distribute. Viewing this evidence in the light most favorable to the State, a rational trier of fact could find Lockman was a dealer in possession of a controlled substance without an official tax stamp, label, or other indicium.

### (c) Tampering With Evidence

Lastly, we address Lockman's challenge to the sufficiency of the evidence to support his conviction of tampering with physical evidence, in violation of Neb. Rev. Stat. § 28-922(1)(a) (Cum. Supp. 2024). Section 28-922 provides, in pertinent part:

(1) A person commits the offense of tampering with physical evidence if, believing that an official proceeding is pending or about to be instituted and acting without legal right or authority, he ...

(a) [d]estroys, mutilates, conceals, removes, or alters physical evidence with the intent to impair its verity or availability in the pending or prospective official proceeding[.]

Lockman does not dispute that he threw the package of fentanyl pills out of the window of the moving vehicle and into a field. Instead, he asserts that his action in doing so was merely an "abandonment" of the property, which as a matter of law does not constitute tampering with evidence. Brief for appellant at 24-25. For this assertion Lockman relies on *State v. Lasu*, 278 Neb. 180, 768 N.W.2d 447 (2009), which held that the crime of tampering with physical evidence does not include mere abandonment of physical evidence in the presence of law enforcement.

We find the facts in this case to be distinguishable from those in *Lasu*. In *Lasu*, the defendant removed a bag of marijuana from his pocket in the presence of a police officer inside of a gas station. *Id*. at 181, 768 N.W.2d at 449-450. The defendant then threw the bag into a large cardboard bin of snack foods, and the bag landed on top. *Id*. The defendant did not attempt to conceal the bag of marijuana in the bin, and the officer immediately retrieved the bag and placed the defendant under arrest. *Id*. In explaining its rationale, the Nebraska Supreme Court noted that the defendant had placed the evidence where it was likely to be discovered. *Id*. at 185, 768 N.W.2d at 452. See, also, *State v. Vasquez-Arenivar*, 18 Neb. App. 265, 779 N.W.2d 117 (2010) (defendant discarded Ziploc bag of methamphetamine on ground with several police officers in close proximity; baggie of drugs was immediately recovered and defendant was arrested).

In this case, Lockman threw a bag of fentanyl pills out of the window of a moving vehicle, where it landed in a field next to a county road. Radomski gave Vera Chavez information regarding the location of the fentanyl pills during the traffic stop. Vera Chavez did not see the drugs being thrown out of the vehicle. Law enforcement was only able to recover the discarded fentanyl pills in the field based on Radomski's detailed description of where Lockman had thrown them out the vehicle's window. Based on these circumstances, we cannot say that Lockman discarded the fentanyl pills in the presence of law enforcement or where they were likely to be discovered. Thus, when viewing the evidence in this case in the light most favorable to the prosecution, the jury could have found that Lockman's act of throwing the fentanyl pills out of the window of a moving vehicle and into a field was done to conceal or remove the evidence, with the intent to impair its availability in a prospective official proceeding. See § 28-922(1)(a).

The district court did not err in accepting the jury's guilty verdicts.

### 3. DIRECTED VERDICT

Lockman also argues that his motion for a directed verdict should have been sustained as to the two charges of possession with intent to distribute.

Lockman moved for a directed verdict at the close of the State's evidence, and he presented no evidence after the motion was overruled. He therefore has preserved for appellate review the district court's denial of his motion for a directed verdict. See *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020).

In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained. *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021). When a motion for a directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *Id.*

Because we found above that there was sufficient evidence to support Lockman's two convictions for possession with intent to distribute, Lockman's claim for a directed verdict fails. If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. See *State v. Williams*, 306 Neb. 261, 945 N.W.2d 124 (2020). The district court did not err in overruling Lockman's motion for a directed verdict.

#### 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Through different counsel, Lockman contends that his trial counsel provided ineffective assistance in failing to renew his motion to suppress.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024). Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. German, supra*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to

establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

Lockman argues that trial counsel was ineffective for failing to renew Lockman's motion to suppress, claiming that the district court erred when it overruled the motion. Lockman argues that the State lacked any corroboration of Radomski's claims regarding the drugs and that Radomski "was not a sufficiently reliable witness upon which to base a stop of the vehicle in which Lockman was a passenger." Brief for appellant at 19. To demonstrate prejudice from counsel's failure to renew his motion to suppress, Lockman must allege facts sufficient to demonstrate there was a reasonable probability such a motion would have been successful. See, e.g., *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018) (unless motion to suppress would have been successful, it cannot be said counsel was deficient in failing to file such motion).

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021).

As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. See *State v. Flodman*, 33 Neb. App. 504, 18 N.W.3d 599 (2025). Here, Vera Chavez did not observe any traffic violations before stopping the vehicle in which Lockman was a passenger.

Police can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the Fourth Amendment. *Id.* Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. In determining whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account. *Id.*

The question of reasonable suspicion here turns on whether, considering the totality of the circumstances, Vera Chavez had reliable information that provided a particularized and objective basis for suspecting that the vehicle in which Lockman was a passenger was traveling with narcotics.

During the suppression hearing, Massie testified that Radomski had previously provided law enforcement with reliable information, which had led to an arrest. In June 2024, Radomski had been working with Massie for over 3 months. Massie also found Radomski's reports regarding Lockman to be reliable because Radomski implicated herself in the possession of distribution

quantities of controlled substances without having the permission of law enforcement to accompany Lockman to Colorado.

Evidence at the suppression hearing established that Radomski, a known and reliable informant, reported to Massie that a black Toyota Corolla with Michigan license plates, which Radomski was driving, contained large quantities of drugs including over a pound of methamphetamine and 2,000 fentanyl pills. Based on Radomski's description of where she was located, investigators found the vehicle and conducted surveillance, which enabled law enforcement to confirm that Radomski was driving and Lockman was in the passenger's seat of that vehicle. Massie communicated with other WING officers in the area regarding the direction the vehicle was traveling as well as its identifying features. Hunter advised Vera Chavez that a black Toyota Corolla with Michigan license plates was transporting methamphetamine and fentanyl pills.

Thus, the detailed eyewitness report of a crime supplied by Radomski was reliable information that established reasonable suspicion, supported by articulable facts, that criminal activity was ongoing. As a result, the investigatory stop by Vera Chavez was reasonably justified and did not violate the Fourth Amendment.

Having found that the stop of vehicle was lawful, the next issue concerns the search of the vehicle, which produced two bags of methamphetamine from behind the vehicle's dashboard. We agree with the district court that Lockman does not have standing to challenge the search of the vehicle because he had no privacy interest in the rented vehicle. A driver of a rental vehicle may have standing to challenge a detention or search if he or she has demonstrated that he or she has received permission to drive the vehicle from the individual authorized on the rental agreement. *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011). Here, the vehicle was rented by Harshbarger, Lockman was not listed as an authorized driver on the rental agreement, and there was no evidence presented at the suppression hearing that Lockman had permission from Harshbarger to drive the vehicle.

Because the investigatory stop of the vehicle was lawful, there was no illegal seizure of Lockman's person. Lockman also lacks a separate privacy interest in the rental vehicle to challenge the search. We agree with the findings of the district court in its denial of Lockman's motion to suppress. Because the district court properly overruled Lockman's motion to suppress, Lockman suffered no prejudice from trial counsel's failure to renew it. This claim fails.

## VI. CONCLUSION

For the reasons stated herein, we affirm the convictions and sentences imposed by the district court.

AFFIRMED.